UNITED STATES DISTRICT COURT

DISTRICT OF CONNECTICUT

| | |
|---|---|
| CHRISTOPHER SADOWSKI,<br>    Plaintiff, | :<br>:<br>: |
| v. | : Case No. 3:18cv1074(KAD) |
| JUDGE RICHARD DYER, ET AL.,<br>    Defendants. | :<br>:<br>: |

## INITIAL REVIEW ORDER

The plaintiff, Christopher Sadowski, filed a civil rights complaint against Superior Court Judge Richard Dyer, John Doe Prosecutor 1, John Doe Prosecutor 2, John Doe Bail Commissioner and multiple John and Jane Doe defendants employed by the State of Connecticut Department of Corrections. For reasons set forth below, the complaint is dismissed in its entirety with leave to file an amended complaint as against some of the named defendants.

**Standard of Review**

Pursuant to 28 U.S.C. § 1915A(b), the court must review prisoner civil complaints against governmental actors and "dismiss ... any portion of [a] complaint [that] is frivolous, malicious, or fails to state a claim upon which relief may be granted," or that "seeks monetary relief from a defendant who is immune from such relief." Id. Rule 8 of the Federal Rules of Civil Procedure requires that a complaint contain "a short and

plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2).

Although detailed allegations are not required, "a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face. A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (internal quotation marks and citations omitted). A complaint that includes only "'labels and conclusions,' 'a formulaic recitation of the elements of a cause of action' or 'naked assertion[s]' devoid of 'further factual enhancement,'" does not meet the facial plausibility standard. Id. (quoting Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555, 557 (2007)). Although courts still have an obligation to interpret "a pro se complaint liberally," the complaint must include sufficient factual allegations to meet the standard of facial plausibility. See Harris v. Mills, 572 F.3d 66, 72 (2d Cir. 2009) (citations omitted).

**Allegations**

On November 6, 2016, police officers arrested the plaintiff on charges of disorderly conduct and interfering with a 911 call. Compl., ECF No. 1, ¶ 1. At his arraignment, a judge

2

instructed the plaintiff not to contact his girlfriend, and released the plaintiff on a promise to appear.  Id.

On November 7, 2016, the plaintiff contacted his girlfriend via a text message.  Id. ¶ 2.  Southington Police officers arrested the plaintiff on the charge of violation of a protective order.  Id.  A police official set the plaintiff's bond at $10,000.00, which he was able to post.  Id.

On November 29, 2016, police officers arrested the plaintiff on the charge of violation of a protective order because he had contacted his girlfriend.  Id. ¶ 3.  A police official set the plaintiff's bond at $25,000.00, which he was able to post.  Id.

On February 11, 2017, police officers arrested the plaintiff again on the charge of violation of a protective order because he had contacted his girlfriend.  Id. ¶ 4.  A police official set the plaintiff's bond at $15,000.00, which he was able to post.  Id.

On March 10, 2017, police officers arrested the plaintiff on charges of violation of a protective order, disorderly conduct and assault in the third degree.  Id. ¶ 5.  A police official or a judge set the plaintiff's bond at $125,000.00 which again, the plaintiff was able to post.  Id.

On March 15, 2017, police officers arrested the plaintiff

on charges of intimidation of a witness, harassment in the second degree and violation of a protective order. Id. ¶ 6. A police official or a judge set the plaintiff's bond at $100,000.00, which once again, the plaintiff posted. Id.

On June 11, 2017, police officers arrested the plaintiff on the charge of violation of a protective order. Id. ¶ 9. Following this arrest, Superior Court Judge Richard Dyer set the plaintiff's bond at $400,000.00. Id. Judge Dyer informed the plaintiff that if "bond[ed] out," he would hold a bond hearing and raise all of the plaintiff's bond amounts. Id. The plaintiff posted the $400,000.00 bond. Id. Upon his release from Hartford Correctional Center ("Hartford Correctional"), the plaintiff was on "bond probation" and had to wear a monitoring bracelet. Id. ¶ 10. He subsequently failed to pass a urine test. Id.

On July 20, 2017, Judge Dyer raised all of the plaintiff's bonds to include raising the $400,000.00 bond to $800,000.00 in the criminal case that was filed pursuant to the plaintiff's arrest on June 11, 2017.

The plaintiff now claims that the $800,000.00 bond amount was excessive as he was not a flight risk. Id.

After his bonds were increased on July 20, 2017, Connecticut Judicial Marshals transported the plaintiff in a van

4

to Hartford Correctional. Id. ¶ 14. During the trip, the driver stopped suddenly to avoid an accident which caused other inmates in the van to slam into the plaintiff. Id. The plaintiff hit his head against the back divider in the van. Id. ¶ 15.

Upon his arrival at Hartford Correctional, the plaintiff informed both the judicial marshals and facility correctional officers about his head injury and they all laughed at him. Id. ¶ 16. After being processed for admission to Hartford Correctional, the plaintiff spoke with staff members in the medical department regarding his head injury. Id. ¶ 17. None of the medical staff members followed the concussion protocol or scheduled him for an MRI. Id.

The plaintiff experienced severe pain from his head injury. Id. ¶ 18. The plaintiff submitted many requests for medical treatment and was eventually seen by a physician after approximately two weeks. Id. The physician examined the plaintiff and diagnosed him as suffering from post-concussion syndrome. Id. ¶ 19. The physician prescribed multiple medications to alleviate the plaintiff's pain, including a medication that is used as an anti-depressant. Id. ¶ 20. The anti-depressant caused the plaintiff to experience mood swings and to gain a lot of weight. Id. The plaintiff continues to

5

suffer from migraines. Id. ¶ 21.

**Discussion**

The plaintiff first claims that the $800,000.00 bond set by Judge Dyer was excessive and violated his Eighth Amendment rights. Id. ¶¶ 10, 12. The plaintiff further claims that he has experienced an "extreme lack of healthcare throughout his incarceration at" Hartford Correctional, Northern Correctional Institution ("Northern"), Walker Correctional Institution ("Walker") and Osborn Correctional Institution ("Osborn"). Id. ¶ 22. The plaintiff seeks monetary damages.

**Official Capacity Claims – All Defendants**

The plaintiff sues the defendants in their individual and official capacities. Id. ¶ 23. All defendants are State actors. To the extent that the plaintiff seeks money damages from the defendants in their official capacities, such a request for relief is barred by the Eleventh Amendment. See Kentucky v. Graham, 473 U.S. 159 (1985) (Eleventh Amendment, which protects the state from suits for monetary relief, also protects state officials sued for damages in their official capacity); Quern v. Jordan, 440 U.S. 332, 342 (1979) (Section 1983 does not override a state's Eleventh Amendment immunity). Accordingly, the claims against the defendants in their official capacities which seek monetary damages are dismissed with prejudice. See 28 U.S.C. §

1915A(b)(2).

**Judge Dyer**

The plaintiff claims that Judge Dyer violated his Eighth Amendment constitutional rights when he increased his bond to $800,000.00 on July 20, 2017. See U.S. Const. amend. VIII ("[e]xcessive bail shall not be required, nor excessive fines imposed, nor cruel and unusual punishments inflicted").

"It is well settled that judges generally have absolute immunity from suits for money damages for their judicial actions. . . . [and] acts arising out of, or related to, individual cases before the judge are considered judicial in nature." Bliven v. Hunt, 579 F.3d 204, 209-10 (2d Cir. 2009). This immunity applies even to claims that a judge acted in bad faith, erroneously, maliciously or "in excess of his authority." Mireles v. Waco, 502 U.S. 9, 11-12 (1991). A judge is not entitled to absolute immunity, however, "for nonjudicial actions" which were "not taken in the judge's judicial capacity" such as "administrative decisions." Bliven, 579 F.3d at 209-10 (internal quotation marks and citation omitted).

Connecticut General Statutes § 54-64a permits Superior Court judges to set a bond, in no greater amount than necessary, during arraignment or a subsequent proceeding. A Superior Court Judge is also authorized to set conditions of release and to

7

revoke or increase bond if conditions of release are violated.
Thus, in setting and raising the plaintiff's bond, Judge Dyer
was acting in his judicial capacity. See Root v. Liston, 444
F.3d 127, 132 (2d Cir. 2006) ("A decision to increase the amount
of a bond is inherently "judicial," even when it is made outside
the bail application process."); Tucker v. Outwater, 118 F.3d
930, 933 (2d Cir. 1997) ("Justice Outwater's arraignment of
plaintiff and setting of bail were plainly judicial acts.") As
such, Judge Dyer is entitled to absolute immunity with regard to
his conduct in setting and increasing the plaintiff's bond
amounts. The claim against Judge Dyer is dismissed with
prejudice. See 28 U.S.C. § 1915A(b)(2).

**John Doe Prosecutors 1 and 2 and Bail Commissioner**

The plaintiff names two prosecutors and a bail commissioner
as defendants. He does not identify these defendants by name or
otherwise mention or refer to these defendants in the body of
the complaint. The exhibits to the complaint that appear to
relate to the plaintiff's many arrests during the period from
November 2016 to June 2017, do not reflect the involvement of a
Bail Commissioner or a State's Attorney in connection with the
bond amounts set for each arrest. See Comp. at 15-35.

Absent allegations that either John Doe 1 Prosecutor, John
Doe 2 Prosecutor or the Bail Commissioner, through their

8

conduct, violated the plaintiff's constitutionally protected rights, the claim is not facially plausible. The claims against the John Doe Prosecutors and John Doe Bail Commissioner are dismissed. See 28 U.S.C. § 1915A(b)(1).

**Correctional Officers, Physicians and Nurses**

The plaintiff has named two correctional officers, a nurse and a mental health nurse from Hartford Correctional, two nurses and a physician named Michael Clements from Northern, two nurses and a doctor from Walker and four nurses and two doctors from Osborn. The plaintiff generally asserts that he did not receive necessary healthcare during his confinement at any of these facilities. The court addresses his claims one facility at a time, *seriatum.*

**HARTFORD CORRECTIONAL**

The claims against staff at Hartford Correctional arise out of the events of July 20, 2017 and thereafter. Specifically, although the plaintiff advised staff of his head injury, they neither followed the concussion protocol nor sent him for an MRI.

**John Doe Officers**

To the extent that the two John Doe Correctional Officers named on page two of the complaint are the same officers who laughed at the plaintiff upon his arrival at Hartford

9

Correctional, the allegations against them do not state a plausible claim of a violation of the plaintiff's constitutional rights. At the time of the plaintiff's arrival at Hartford Correctional, July 20, 2017, he was a pretrial detainee.

Conditions of confinement claims of pretrial detainees "are governed by the Due Process Clause of the Fourteenth Amendment, rather than the Cruel and Unusual Punishments Clause of the Eighth Amendment . . . because [p]retrial detainees have not been convicted of a crime and thus may not be punished in any manner—neither cruelly and unusually nor otherwise." Darnell v. Pineiro, 849 F.3d 17, 29 (2d Cir. 2017) (internal quotation marks and citations omitted). A pretrial detainee may establish a §1983 claim of unconstitutional conditions of confinement by demonstrating that officers "acted with deliberate indifference to the challenged conditions." Id. In pursuing such claims, "a pretrial detainee must satisfy two prongs to prove a claim, an "objective prong" showing that the challenged conditions were sufficiently serious to constitute objective deprivations of the right to due process, and a "subjective prong" – perhaps better classified as a "*mens rea* prong" … -- showing that the officer acted with at least deliberate indifference to the challenged conditions." Id.

Under the first prong, a detainee must allege that "the

conditions, either alone or in combination, pose[d] an unreasonable risk of serious damage to his health . . . which includes the risk of serious damage to physical and mental soundness." Id. at 30. (internal quotation marks and citations omitted).

To meet the second prong, a pretrial detainee must allege that the prison official "acted intentionally to impose the alleged condition, or recklessly failed to act with reasonable care to mitigate the risk that the condition posed to the pretrial detainee even though the official knew, or should have known, that the condition posed an excessive risk to health or safety." Id. at 35.

It is unclear whether plaintiff's complaint is best characterized as a deliberate indifference to confinement conditions claim or a deliberate indifference to medical needs claim. Regardless the characterization however, the court engages in the same analysis. See, Walker v. Wright, No. 3:17-CV-425 (JCH), 2018 WL 2225009, at *5 (D. Conn. May 15, 2018) ("District courts in this Circuit have . . . applied Darnell's objective "mens rea" prong to claims of deliberate indifference to serious medical needs under the Fourteenth Amendment" because "a footnote in Darnell indicate[d] that 'deliberate indifference means the same thing for each type of claim under the Fourteenth

11

Amendment'" quoting <u>Darnell</u>, 849 F.3d at 33 n.9).

The plaintiff alleges that he suffered an injury during transport to Hartford Correctional. He further alleges that although he advised the correctional officers when he arrived, they laughed at him. That same day, the plaintiff completed the admission process and spoke to a medical staff member about his injury. Although the John Doe Correctional Officers did not take any action in response to the plaintiff's complaint about an injury that he had allegedly suffered in the transport van, there are no allegations that the officers could have provided the plaintiff with medical treatment. Furthermore, the plaintiff states that he was able to speak to a medical provider later that day regarding his injury.

Even construed in a light most favorable to the plaintiff, these allegations do not plausibly satisfy the requirements of a Fourteenth Amendment claim. Even if, *arguendo,* the condition (lack of immediate treatment, an MRI and implementation of the concussion protocol), alone or in the aggregate "posed an unreasonable risk of serious damage to his health" there are inadequate allegations that the John Doe Correctional Officers "recklessly failed to act with reasonable care to mitigate the risk that the condition posed to the plaintiff even though the officers knew or should have known that the conditioned posed an

excessive risk to the plaintiff's health or safety." Accordingly, the Fourteenth Amendment claim asserted against John Doe Correctional Officer 1 and John Doe Correctional Officer 2 is dismissed. See 28 U.S.C. § 1915A(b)(1).

**John Doe Nurses**

There are no specific allegations pertaining to requests for treatment submitted by the plaintiff to either Nurse John Doe from Hartford Correctional or Mental Health Nurse John Doe from Hartford Correctional. Nor are there allegations regarding either defendant's responses to any requests for treatment submitted by the plaintiff. As such, the plaintiff has not alleged a facially plausible claim that either of these defendants violated his Fourteenth Amendment rights. The claims against Nurse John Doe from Hartford Correctional and the claims against Mental Health Nurse John Doe from Hartford Correctional are dismissed. See 28 U.S.C. § 1915A(b)(1).

**NORTHERN**

The plaintiff states that he saw a doctor two weeks after July 20, 2017. By then, he had been transferred to Northern. According to the records attached to the complaint, on or about August 3, 2017, a physician examined him, diagnosed him as suffering from post-concussion syndrome and prescribed medication to alleviate his concussion symptoms. The

13

plaintiff's medical records reflect that on August 3, 2017, at Northern, Dr. Michael Clements prescribed a three-day dose of medication to treat the plaintiff's complaints of pain. Compl. p. 37.

On August 4, 2017, Dr. Clements examined the plaintiff in connection with his complaint of a right ear injury. Id. p. 36. The plaintiff informed Dr. Clements that he had been in a van accident on July 21, 2017 and was experiencing headaches, shooting pain and right-sided ringing in his ears. Id. Dr. Clements diagnosed the plaintiff as suffering from post-concussion syndrome. He prescribed a medication to treat the plaintiff's concussion symptoms, placed the plaintiff on post-concussion syndrome treatment, referred the plaintiff to a mental health provider for treatment of his post-concussion symptoms and recommended a follow-up visit to the medical department in two weeks. Id. 36-37.

With regard to the objective component of the Fourteenth Amendment claim, the plaintiff has plausibly alleged that he suffered from a serious medical condition upon his admission to Northern at the end of July 2017. Dr. Clements diagnosed the plaintiff as suffering from post-concussion syndrome. Compl. p. 36.

To meet the second prong of a deliberate indifference to

14

medical needs claims, a pretrial detainee must allege that the Dr. Clements "acted intentionally to impose the alleged condition [which is not at issue here], or recklessly failed to act with reasonable care to mitigate the risk that the condition posed to [the plaintiff] even though [Dr. Clements] knew, or should have known, that the condition posed an excessive risk to [the plaintiff's] health or safety." Darnell, 849 F.3d at 35. Negligent actions alone do not rise to the level of deliberate indifference and do not meet the second prong of the Fourteenth Amendment standard for either a conditions or a deliberate indifference to medical needs claim. Id. at 36 ("A detainee must prove that an official acted intentionally or recklessly, and not merely negligently.").

The allegations are not that the plaintiff was not treated. He alleges inadequate treatment. However, the allegations regarding the treatment provided by Dr. Clements in early August 2017, as reflected in the plaintiff's medical records, does not plausibly allege a Fourteenth Amendment violation. In fact, although the treatment records are attached to the complaint, there are no factual allegations in the body of the complaint regarding Dr. Clements' treatment of the plaintiff. The claim against Dr. Clements is therefore dismissed. See 28 U.S.C. § 1915A(b)(1).

15

Similarly, there are no factual allegations regarding medical treatment at Northern by Nurse Jane Doe 1 or Nurse Jane Doe 2. Thus, the plaintiff has not alleged a facially plausible claim that either of these defendants violated his federal constitutional rights. The claims against Nurse Jane Doe 1 from Northern and Nurse Jane Doe 2 from Northern are therefore dismissed. See 28 U.S.C. § 1915A(b)(1).

**WALKER AND OSBORN**

It is unclear from the complaint and exhibits as to the date on which prison officials at Northern transferred the plaintiff to Walker or the date on which prison officials at Walker transferred the plaintiff to Osborn. The medical records reflect that as of September 11, 2017, the plaintiff was confined at Walker and that as of October 31, 2017, the plaintiff was confined at Osborn. Compl. at 39-40. However, any claims asserted against the defendants relating to medical treatment that occurred after the plaintiff was sentenced on August 18, 2017 are governed by the Eighth Amendment deliberate indifference standard that is applicable to claims of sentenced individuals. See Bell v. Wolfish, 441 U.S. 520, 535 n.16 (1979).

Deliberate indifference by prison officials to a prisoner's serious medical needs constitutes cruel and unusual punishment

16

in violation of the Eighth Amendment. See Estelle v. Gamble, 429 U.S. 97, 104 (1976) (deliberate indifference by prison officials to a prisoner's serious medical need constitutes cruel and unusual punishment in violation of the Eighth Amendment). To state a claim for deliberate indifference to a serious medical need, a plaintiff must meet a two-pronged test. Under the first prong, a plaintiff must demonstrate that his or her medical or mental health need was "sufficiently serious." Salahuddin v. Goord, 467 F.3d 263, 279 (2d Cir. 2006). Factors relevant to the seriousness of a medical condition include whether "a reasonable doctor or patient would find [it] important and worthy of comment," whether the condition "significantly affects an individual's daily activities," and whether it causes "chronic and substantial pain." Chance v. Armstrong, 143 F.3d 698, 702 (2d Cir. 1998) (quotation marks omitted).

Subjectively, the defendant must have been actually aware of a substantial risk that the inmate would suffer serious harm as a result of his or her actions or inactions. See Salahuddin, 467 F.3d at 279-80. Mere negligent conduct does constitute deliberate indifference. See id. at 280 ("[R]ecklessness entails more than mere negligence; the risk of harm must be substantial and the official's actions more than merely

17

negligent."); Hernandez v. Keane, 341 F.3d 137, 144 (2d Cir. 2003) (medical malpractice alone does not amount to deliberate indifference).

The complaint is devoid of specific allegations regarding treatment or lack of treatment by Nurse Jane Doe 1 from Walker, Nurse Jane Doe 2 from Walker or Dr. John Doe from Walker. Nor are there allegations regarding treatment or lack of treatment by Nurse Jane Doe 1 from Osborn, Nurse Jane Doe 2 from Osborn, Nurse Jane Doe 3 from Osborn, Nurse Jane Doe 4 from Osborn, Dr. John Doe 1 from Osborn or Dr. John Doe 2 from Osborn. Thus, the plaintiff has not alleged that any of these defendants were deliberately indifferent to his serious medical needs in violation of the Eighth Amendment. The claims against these defendants are dismissed as lacking an arguable legal or factual basis. See 28 U.S.C. § 1915A(b)(1).

**ORDERS**

For all of the foregoing reasons, the court enters the following orders:

**(1)** The claims against all defendants in their official capacities and the claims against Judge Richard Dyer are **DISMISSED** with prejudice pursuant to 28 U.S.C. § 1915A(b)(2).

**(2)** The claims against John Doe Prosecutor 1, John Doe Prosecutor 2, and John Doe Bail Commissioner in their individual capacities are **DISMISSED** without prejudice pursuant to 28 U.S.C. § 1915A(b)(1).

**(3)** The claims against John Doe Correctional Officer 1 from Hartford Correctional, John Doe Correctional Officer 2 from Hartford Correctional, Nurse John Doe from Hartford Correctional, Mental Health Nurse John Doe from Hartford Correctional, Dr. Michael Clements from Northern, Nurse Jane Doe 1 from Northern, Nurse Jane Doe 2 from Northern, Nurse Jane Doe 1 from Walker, Nurse Jane Doe 2 from Walker, Dr. John Doe from Walker, Nurse Jane Doe 1 from Osborn, Nurse Jane Doe 2 from Osborn, Nurse Jane Doe 3 from Osborn, Nurse Jane Doe 4 from Osborn, Dr. John Doe 1 from Osborn and Dr. John Doe 2 from Osborn in their individual capacities are **DISMISSED** without prejudice pursuant to 28 U.S.C. § 1915A(b)(1).

**(4)** The plaintiff may file an amended complaint within thirty (30) days to assert facts which satisfy the facially plausible pleading requirements set forth above with respect to any claims dismissed without prejudice. To the extent the plaintiff pursues claims

arising out of his medical treatment, or lack thereof, the amended complaint should include the dates on which any requests for treatment were made, to whom such requests were made, the dates of any responses to those requests, the identity of the person responding, and the dates on which the plaintiff was seen by a medical provider or underwent medical tests or examinations.

If the plaintiff chooses not to file an amended complaint within the time specified, the court will direct the Clerk to enter judgment for the defendants and close this case.

It is so ordered.

Signed this 5th day of October, 2018, at Bridgeport, Connecticut.

_____/s/_____
Kari A. Dooley
United States District Judge