UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

| | | |
|---|---|---|
| CHRISTOPHER SADOWSKI, | : | |
| Plaintiff, | : | |
| | : | |
| v. | : | Case No. 3:18-cv-1074(KAD) |
| | : | |
| JUDGE RICHARD DYER, ET AL., | : | |
| Defendants. | : | |

## <u>INITIAL REVIEW ORDER</u>

**Preliminary Statement**

The plaintiff, Christopher Sadowski ("Sadowski"), currently resides in Hartford, Connecticut. He initiated this action by filing a civil rights complaint against Judge Richard Dyer, John Doe Prosecutor 1, John Doe Prosecutor 2, John Doe Bail Commissioner ,and multiple John and Jane Doe defendants employed at various facilities within the Department of Correction. On October 5, 2018, the Court dismissed the claims against Judge Dyer with prejudice pursuant to 28 U.S.C. § 1915A(b)(2) and dismissed the claims against the remaining Doe defendants without prejudice pursuant to 28 U.S.C. § 1915A(b)(1). *See* Initial Review Order, ECF No. 8, at 18-19.

The Court permitted Sadowski thirty days to file an amended complaint as to any claims that were dismissed without prejudice. *See id.* at 19. The Court cautioned Sadowski that if he sought to amend his complaint with regard to any claims arising out of medical treatment, he must include the dates on which requests for treatment were made, to whom such requests were made, the dates of any responses to those requests, the identity of the person responding and date on which he was seen by a medical provider or underwent medical tests or examinations. *See id.* at 19-20.

On November 2, 2018, Sadowski filed an amended complaint naming Judge Richard Dyer, Nurse Linda Oeser, Nurse Ellen Durko, Nurse John Doe from Hartford Correctional Ceter ("Hartford Correctional"), Nurse Jane Doe from Northern Correctional Institution ("Northern"), Nurse Chris Doe Nurse from Walker Correctional Institution ("Walker"), Nurse Jane Doe from Radgowski Correctional Institution ("Radgowski"), Nurse Jane Doe from Osborn Correctional Institution ("Osborn"), Dr. Michael Clements, Dr. Carson Wright, Dr. S. Johar Naqvi, Dr. Cary R. Freston and Dr. J. Wright as defendants. For the reasons set forth below, the amended complaint is dismissed in part.

**Standard of Review**

Pursuant to 28 U.S.C. § 1915A(b), the court must review prisoner civil complaints against governmental actors and "dismiss . . . any portion of [a] complaint [that] is frivolous, malicious, or fails to state a claim upon which relief may be granted" or that "seeks monetary relief from a defendant who is immune from such relief." *Id.* Rule 8 of the Federal Rules of Civil Procedure requires that a complaint contain "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2).

Although detailed allegations are not required, "a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face. A claim has facial plausibility when a plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (internal quotation marks and citations omitted). A complaint that includes only "'labels and conclusions,' 'a formulaic recitation of the elements of a cause of action' or 'naked assertion[s]' devoid of 'further factual enhancement,'" does not meet the facial plausibility standard. *Id.* (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555, 557 (2007)).

Although courts still have an obligation to interpret "a *pro se* complaint liberally," the complaint must include sufficient factual allegations to meet the standard of facial plausibility. *See Harris v. Mills*, 572 F.3d 66, 72 (2d Cir. 2009) (citations omitted).

**Allegations**

On February 21, 2017, Judge Dyer signed a warrant for Sadowski's arrest on a charge of criminal violation of a protective order. *See* Am. Compl. at 12 ¶ 2 & at 25-26. Sadowski claims that he reviewed the arrest warrant affidavit and it contains a statement that the victim's father saw him at the victim's house. *See id.* Sadowski contends that the father's statement contradicts the victim's statement. *See id.* ¶ 3

The amended complaint includes many allegations regarding the conduct of the victim described in the arrest warrant affidavit and how she "manipulated [Sadowski] on a[n] emotional level that didn't allow [him] to make rational or logical decisions that landed [him in trouble." *See id.* ¶¶ 4-9. He alleges that the victim gave many contradictory and false statements to the police; s*ee id.* at 13 ¶¶ 10-11; and that on more than one occasion, the victim was intoxicated when she made statements to the police; *see id.* ¶ 10.

After his arrest pursuant to the warrant issued by Judge Dyer, Sadowski attempted to explain to Judge Dyer that the victim had manipulated him on an emotional level, but Judge Dyer would not listen to him. *See id.* ¶ 11. Sadowski asserts that Judge Dyer was biased against him and treated him "as if [he] were a monster." *See id.*

Judge Dyer set Sadowski's bond at $800,000.00 for a non-violent offense. *See id.* ¶ 12. Sadowski showed up at many court dates and was not a flight risk. *See id.* At some point, "the prosecutors threw out the entire case." *See id.* ¶ 10.

While held on bond, on July 21, 2017, State of Connecticut Judicial Marshals placed

Sadowski in a van in handcuffs to be transported to Hartford Correctional. *See id.* ¶ 13. Sadowski sat sideways on a plastic bench in the back of the van without a seatbelt. *See id.* During the trip, the driver had to make a sudden stop to avoid an accident which caused other inmates in the van to slam into Sadowski. *See id.* Sadowski hit his head "extremely hard" against the back divider in the van. *See id.* ¶ 14.

Upon his arrival at Hartford Correctional, Sadowski informed both the judicial marshals and facility correctional officers about his head injury and they all laughed at him. *See id.* ¶ 15. After being processed for admission to Hartford Correctional, Sadowski informed medical staff members that he had injured his head and that he was experiencing pain from the injury. *See id.* at 14 ¶ 16. The nurses stated that he could handle a bump on his head. *See id.* Sadowski questioned a nurse as to whether there was a concussion protocol to be followed and also requested to be seen by a physician. *See id.* A nurse instructed Sadowski to submit a written request to see a physician. *See id.*

From July 21, 2017 to July 25, 2017, Sadowski submitted multiple written requests to the medical department for treatment for the pain caused by his head injury. *See id.* ¶ 17. Sadowski thinks that he received one response to his multiple requests. *See id.* Medical staff members dispensed Ibuprofen for pain but did not refer Sadowski for an MRI or to see a specialist and did not follow concussion protocol. *See id.*

On July 25, 2017, prison officials at Hartford Correctional transferred Sadowski to Northern. *See id.* at ¶ 29. Upon his arrival, Sadowski informed medical staff members that he was experiencing severe pain from his head injury and requested to be seen by a physician. *See id.* Medical staff members placed Sadowski on a list to be seen by a physician. *See id.* From July 26, 2017 to July 31, 2017, Sadowski submitted written requests to be seen by a physician

because he was experiencing pain from his head injury, blood in his stool, dizziness, blurred vision and ringing in his ears. *See id.* at 15 ¶ 19.

On July 31, 2017, Nurse Oeser saw Sadowski and dispensed Acetaminophen for pain to be taken for three days. *See id.* & at 31. She informed Sadowski that he was on the waiting list to see a physician and directed him to notify the medical department if his symptoms did not improve. *See id.* at & 56.

On August 3, 2017, Nurse Durko saw Sadowski. *See id.* ¶ 20. During the visit, Sadowski informed Nurse Durko that he had suffered an injury to his head, was experiencing constant pain and needed to be seen by a physician. *See id.* Nurse Durko indicated that Sadowski was on a waiting list to see a physician. *See id.* In response to Sadowski's question as to whether his head injury should take priority over other inmates' medical issues, Nurse Durko again informed him that he was on the waiting list to see a physician. *See id.* Nurse Durko dispensed Ibuprofen for pain to be taken for three days. *See id.* & at 31.

On August 4, 2017, Dr. Clements examined Sadowski in connection with his complaint of a ringing in his right ear. *See id.* ¶ 21 & at 29. Sadowski informed Dr. Clements that he had been in a van accident on July 21, 2017 and was experiencing headaches, shooting pain and right-sided ringing in his ears. *See id.* Dr. Clements diagnosed Sadowski as suffering from mild, post-concussion syndrome. *See id.* He prescribed a medication to treat Sadowski's concussion symptoms, referred Sadowski to a mental health provider for treatment of his post-concussion symptoms and recommended a follow-up visit to see a nurse in the medical department in two weeks. *See id.* at 29, 31.

From August 4, 2017 to August 22, 2017, Sadowski submitted written requests to be seen by a specialist because he continued to experience pain from his head injury. *See id.* at 16 ¶ 22.

On August 22, 2017, Nurse Durko saw Sadowski. *See id.* During the visit, Sadowski informed Nurse Durko that he was still experiencing pain from his head injury and was also experiencing severe dizziness and blurred vision. *See id.* In addition, Sadowski complained that the Ibuprofen that he had been taking was upsetting his stomach and had caused blood in his stool. *See id.* at 60. Nurse Durko spoke with Dr. Carson Wright about Sadowski's complaints. Dr. C. Wright prescribed Naproxen, 500 milligrams, to be taken for thirty days, for pain and directed Nurse Durko to dispense Acetaminophen to Sadowski. *See id.* Dr. Wright also recommended that Sadowski be placed on the sick call list to see a physician. *See id.* at 31, 60.

On or about August 31, 2017, prison officials at Northern transferred Sadowski to Walker. *See id.* at 30. At a visit to the medical department on August 31, 2017, Sadowski reported no pain or immediate health needs. *See id.* On September 7, 2017, Nurse Chris Doe saw Sadowski. *See id.* ¶ 23. During the visit, Sadowski informed Chris Doe that he was experiencing severe pain from a head injury/concussion that he had sustained on July 21, 2017. *See id.* Chris Doe placed Sadowski on a list to be seen by a physician for multiple medical issues. *See id.* & at 52.

On September 11, 2017, Dr. Naqvi saw Sadowski. *See id.* ¶ 24. During the visit, Sadowski informed Dr. Naqvi that he had been experiencing pain for months and had not been seen by a specialist. *See id.* Dr. Naqvi recommended that Sadowski start on a medication called Elavil and that Sadowski continue to take Naproxen. *See id.* On September 25, 2017, Dr. Naqvi saw Sadowski. *See id.* ¶ 25. During the visit, Sadowski informed Dr. Naqvi that he had gained a lot of weight and was experiencing mood swings. *See id.* Dr. Naqvi did not inform Sadowski of the side effects of Elavil. *See id.*

On October 11, 2017, Dr. Naqvi saw Sadowski. *See id.* ¶ 26. During the visit, Sadowski

informed Dr. Naqvi that the Elavil had alleviated some of his pain, but the side effects of the medication were "making [him] function less." *See id.* Dr. Naqvi increased the dosage of Elavil and suggested that Sadowski exercise. *See id.* ¶ 27. Sadowski indicated that it was difficult to engage in a routine exercise program at Walker. *See id.* Dr. Naqvi did not refer Sadowski to a specialist. *See id.* He was more concerned about the length of Sadowski's sentence. *See id.* ¶ 28.

On October 27, 2017, prison officials at Walker mistakenly transferred Sadowski to Radgowski without his pain medication. *See id.* at 17 ¶ 29. On October 30, 2017, prison officials at Radgowski transferred Sadowski to Osborn where his medical needs could be met. *See id.*

On October 31, 2017, Sadowski informed medical staff members at Osborn that he had suffered a head injury and needed to be referred to a specialist. *See id.* ¶ 31. Staff members informed Sadowski that he had been placed on a list to see a physician. *See id.*

On January 6, 2018, Dr. Freston directed a nurse to dispense Ibuprofen to Sadowski for pain. *See id.* ¶ 32. On January 9, 2018, Dr. J. Wright renewed Sadowski's prescription for Elavil to treat his headaches. *See id.* ¶ 33 & at 34. Sadowski experienced side effects from the Elavil. *See id.*

On February 14, 2018, Nurse Gunther dispensed Ibuprofen to Sadowski for pain. *See id.* ¶ 34. On February 17, 2018, a nurse dispenses Acetaminophen and Ibuprofen to Sadowski for pain. *See id.* ¶ 35. Later that day, Sadowski experienced a high fever because he had the flu. *See id.* at 18 ¶ 36. Dr. J. Wright prescribed Tamiflu to be taken for five days. *See id.*

On February 21, 2018, Sadowski had an allergic reaction to Tamiflu and Dr. J. Wright prescribed Benadryl to treat his symptoms. *See id.* ¶ 37 & at 37. On February 22, 2018,

Sadowski broke out in hives, his hands became swollen and he experienced additional pain.  *See id.* ¶ 38.  Medical staff members would not provide Sadowski with an ice pack for his hands.  *See id.*  Dr. J. Wright prescribed Prednisone for Sadowski's symptoms.  *See id.* & at 37.

On March 21, 2018, Sadowski spoke to Dr. Freston via Skype about the symptoms that he had experienced from taking Elavil.  *See id.* ¶ 39.  He indicated the symptoms were making him feel uncomfortable.  *See id.*  Sadowski's medical records reflect a note regarding his telemedicine visit with Dr. Freston.  *See id.* at 38, 40-41.  Dr. Freston indicated that Sadowski had not been taking Elavil for over two months but that it was clear that Sadowski had been better when he had taken Elavil in the past.  *See id.* at 40.  Dr. Freston opined that no imaging was necessary.  *See id.*  Dr. Freston re-prescribed Elavil, 50 milligrams, to be taken once a day for six months, and prescribed Ibuprofen, 800 milligrams, to be taken every day for thirty days, and recommended that Sadowski return to the medical department in six months for headache and pain management.  *See id.* at 38, 40.

From March 23, 2018 to April 24, 2018, Sadowski sent requests to the medical department at Osborn complaining about the side effects of Elavil and asking that he be prescribed a different medication.  *See id.* at 80-86.  There is no indication that anyone in the medical department acted on the requests.  *See id.*

At some point after taking Elavil, Sadowski researched the side effects associated with it.  *See id.* at 10.  Sadowski learned that the side effects include: massive weight gain/slow metabolism, mood swings, sedation/over sleeping and suicide.  *See id.*  Sadowski would not have taken Elavil had he known the side effects at the time that Drs. Naqvi, J. Wright and Freston prescribed it to him.  *See id.*  Sadowski claims that the side effects of Ibuprofen are heartburn, rectal spasms, gastrointestinal issues and fecal incontinence.  *See id.*  Since his release from

prison in October 2018, physicians and specialists have treated Sadowski for rectal dysfunction and back pain due to weight gain. *See id.* at 11.

## Discussion

### Judge Dyer – Judicial Immunity

In the complaint, Sadowski alleged that Judge Dyer violated his Eighth Amendment rights by raising his bond to $800,000.00. *See* U.S. Const. amend. VIII ("[e]xcessive bail shall not be required, nor excessive fines imposed, nor cruel and unusual punishments inflicted"). In dismissing this claim against Judge Dyer with prejudice, the Court concluded that in setting and raising Sadowski's bond, Judge Dyer was acting in his judicial capacity. As such, Judge Dyer was entitled to absolute immunity. *See* Initial Review Order at 7-8.

In the amended complaint, Sadowski claims that Judge Dyer signed a warrant for his arrest on February 21, 2017 and that the warrant affidavit included contradictory or false statements. Sadowski contends that during his criminal case, Judge Dyer was biased against him, treated him as if he were a monster and would not listen to his explanations regarding manipulative behavior by the victim. At some point, the prosecutors "threw out the entire case" against him. Sadowski also re-asserts his claim that Judge Dyer violated his Eighth Amendment rights by raising his bond to $800,00.00. Sadowski seeks monetary damages from Judge Dyer in his individual capacity only.

"It is well settled that judges generally have absolute immunity from suits for money damages for their judicial actions. . . . [and] acts arising out of, or related to, individual cases before the judge are considered judicial in nature." *Bliven v. Hunt*, 579 F.3d 204, 209-10 (2d Cir. 2009). This immunity applies even to claims that a judge acted in bad faith, erroneously, maliciously or "in excess of his authority." *Mireles v. Waco*, 502 U.S. 9, 11-12 (1991). A judge

is not entitled to absolute immunity, however, "for nonjudicial actions" which were "not taken in the judge's judicial capacity" such as "administrative decisions." *Bliven*, 579 F.3d at 209-10 (internal quotation marks and citation omitted).

The Court does not revisit Judge Dyer's liability in the setting of Sadowski's bond. The claim was dismissed with prejudice. Furthermore, issuing an arrest or search warrant is a judicial act within the jurisdiction of a state court judge. *See Tucker,* 118 F.3d at 933 (arraignment, setting bail, issuing warrants are judicial activities); *Fernandez v. Alexander*, 419 F. Supp. 2d 128, 133 (D. Conn. 2006) ("The issuance of search warrants is an action taken in defendant [Judge] Carroll's judicial capacity."). In addition, Judge Dyer's alleged bias against Sadowski and inaccurate or negative characterization of Sadowski's nature as well as his alleged refusal to permit Sadowski to explain that his behavior was due to manipulative conduct by the victim, occurred during Sadowski's criminal case or court proceedings prior to the dismissal of the charges against him. There are no allegations that Judge Dyer dealt with Sadowski outside of his role as a Superior Court Judge presiding over Sadowki's criminal case. Thus, Sadowski's conclusory characterization of Judge Dyer's conduct as non-judicial is not supported by the facts. The Court concludes that Judge Dyer is entitled to absolute immunity with regard to signing and issuing a warrant for Sadowski's arrest and presiding over proceedings involving Sadowski prior to the dismissal of the criminal case. *See Mireles*, 502 U.S. at 11 ("judicial immunity is not overcome by allegations of bad faith or malice"); *Diblasio v. Novello*, 344 F.3d 292, 297 (2d Cir. 2003) ("[O]nce a court determines that an official was functioning in a core judicial or prosecutorial capacity, absolute immunity applies however erroneous the act may have been, and however injurious in its consequences it may have proved to the plaintiff.") (citations and

internal quotation marks omitted).  The claim against Judge Dyer is dismissed with prejudice. *See* 28 U.S.C. § 1915A(b)(2).

### Defendant Physicians and Nurses - Official Capacity Claims

Sadowski seeks monetary damages from each of the individually named defendants in both their individual and official capacities.  To the extent that Sadowski seeks money damages from these defendants in their official capacities, such a request for relief is barred by the Eleventh Amendment.  *See Kentucky v. Graham*, 473 U.S. 159 (1985) (Eleventh Amendment, which protects the state from suits for monetary relief, also protects state officials sued for damages in their official capacity); *Quern v. Jordan*, 440 U.S. 332, 342 (1979) (Section 1983 does not override a state's Eleventh Amendment immunity).  Accordingly, the claims for monetary damages against Nurses Durko, Oeser, John Doe from Hartford Correctional, Jane Doe from Northern, Chris Doe from Walker, Jane Doe from Radgowski and Jane Doe from Osborn and Drs. Clements, C. Wright, Naqvi, Freston and J. Wright in their official capacities are dismissed.  *See* 28 U.S.C. § 1915A(b)(2).

### Defendant Physicians and Nurses – Individual Capacity Claims
### Fourteenth Amendment Deliberate Indifference to Medical Needs

It is evident from Connecticut Superior Court records that at the time of Sadowski's arrival at Hartford Correctional on July 21, 2017, he was a pretrial detainee.[1]  These records reflect that on August 18, 2017, a judge sentenced Sadowski to a term of imprisonment of twenty-five months pursuant to his plea of guilty to a charge of violation of a protective order. Thus, during his confinement at Hartford Correction from July 21, 2017 to July 26, 2017 and

---

[1]  Information regarding Inmate Sadowski's August 18, 2017 convictions and sentences may be found at: http://www.jud.ct.gov/jud2.htm under Superior Court Case Look-up, Criminal/Motor Vehicle, Convictions – by Docket Number using H17WB-CR16-0065838-S & H17B-CR17-0066573-S.

during part of his confinement at Northern from July 26, 2017 to August 17, 2017, he was a pretrial detainee.

Conditions of confinement claims of pretrial detainees "are governed by the Due Process Clause of the Fourteenth Amendment, rather than the Cruel and Unusual Punishments Clause of the Eighth Amendment . . . because "[p]retrial detainees have not been convicted of a crime and thus may not be punished in any manner—neither cruelly and unusually nor otherwise." *Darnell v. Pineiro*, 849 F.3d 17, 29 (2d Cir. 2017) (internal quotation marks and citations omitted). In *Darnell*, the Second Circuit clarified and re-defined the legal standard to be applied to a pretrial detainee's claims of deliberate indifference under the Fourteenth Amendment in light of the Supreme Court's decision in *Kingsley v. Hendrickson*, ___ U.S. ___, 135 S. Ct. 2466 (2015).

To state a claim for unconstitutional conditions of confinement, a pretrial detainee must show that the defendants acted with deliberate indifference to those conditions. *Darnell v. Pineiro*, 849 F.3d 17, 29 (2d Cir. 2017). The deliberate indifference test has two parts. First, the detainee must show that, objectively, the conditions were "sufficiently serious to constitute objective deprivations of the right to due process." *Id.* Second, the detainee must show that the defendants "acted intentionally to impose the alleged condition, or recklessly failed to act with reasonable care to mitigate the risk that the condition posed to the pretrial detainee even though the defendant-official knew, or should have known, that the condition posed an excessive risk to health or safety." *Id.* at 35 (applying *Kinglsey v. Hendrickson*, ___ U.S. ___, 135 S. Ct. 2466 (2015)). Negligent actions alone do not rise to the level of intentional or reckless conduct and do not meet the second prong of this standard. *See id.* at 36 ("A detainee must prove that an official acted intentionally or recklessly, and not merely negligently."). This standard applies to claims of deliberate indifference to medical needs by a pretrial detainee as well. *See Walker v. Wright*,

12

No. 3:17-CV-425 (JCH), 2018 WL 2225009, at *5 (D. Conn. May 15, 2018) ("District courts in this Circuit have ... applied *Darnell's* objective "*mens rea*" prong to claims of deliberate indifference to serious medical needs under the Fourteenth Amendment" because "a footnote in *Darnell* indicate[d] that 'deliberate indifference means the same thing for each type of claim under the Fourteenth Amendment'") (quoting *Darnell*, 849 F.3d at 33 n.9)).

Here, Sadowski has plausibly alleged that he suffered from a serious medical condition, severe pain in his head and a possible concussion, upon his admission to Hartford Correctional on July 21, 2017. On August 4, 2017, Dr. Clements diagnosed Sadowski as suffering from mild, post-concussion syndrome. Sadowski alleges that he continued to experience severe headaches as well as intermittent dizziness and blurred vision during the period from July 21, 2017 to March 2018.

The Court next considers whether Sadowski has plausibly alleged the *mens rea* prong of the Fourteenth Amendment standard as to each defendant who treated him during the period when he was a pretrial detainee.

### John Doe from Hartford Correctional and Jane Doe from Northern

Sadowski does not mention either Nurse John Doe from Hartford Correctional or Nurse Jane Doe from Northern in the body of the amended complaint. As such, he has not alleged that either defendant violated his constitutional rights. To the extent that Nurse John Doe is the nurse who spoke to Sadowski upon his admission to Hartford Correctional on July 21, 2017 and recommended that he submit a request to be seen by a physician or that Nurse Jane Doe was one of the medical staff members who saw him on July 26, 2017 at Northern and indicated that his name had been placed on a list to see a physician, those allegations do not state a claim of deliberate indifference to or reckless disregard for his medical needs. Accordingly, the claims

13

against Nurse Jane Doe 1 from Northern and Nurse John Doe from Hartford Correctional are dismissed as lacking any arguable legal and factual basis. *See* 28 U.S.C. § 1915A(b)(1).

**Dr. Clements**

Although the amended complaint does not include a description of the treatment provided to Sadowski by Dr. Clements on August 4, 2017, copies of Sadowski's medical records documenting the visit with Dr. Clements are attached to the amended complaint as exhibits. Dr. Clements listened to Sadowski's complaints, diagnosed him as suffering from post-concussion syndrome, prescribed medication to treat his symptoms and referred him to the mental health department for additional treatment. *See* Am. Compl. at 29, 31. The treatment provided by Dr. Clements on August 4, 2017, as reflected in Sadowski's medical records, does not constitute intentional or reckless disregard or indifference to Sadowski's medical condition or injury to his head. The Court concludes that Sadowski has not plausibly alleged that Dr. Clements was intentionally or recklessly indifferent to his medical needs. Thus, the Fourteenth Amendment claim against Dr. Clements is dismissed. *See* 28 U.S.C. § 1915A(b)(1).

**Nurse Oeser**

Sadowski states that Nurse Oeser treated him on July 31, 2017. He claims that he complained of pain from the injury to his head, dizziness, blurred vision and ringing in his ears. Nurse Oeser dispensed Acetaminophen to Sadowski for pain and informed him that he was on a list to see a physician. In her note in Sadowski's medical records, Nurse Oeser related that Sadowski had denied dizziness or light headedness. *See* Am. Compl. at 56. She instructed him to contact the medical department if his symptoms became worse or did not improve. *See id.* Further development of the record is necessary to determine whether Nurse Oeser's decision not to immediately refer Sadowski to a physician due the severity and/or nature of his symptoms

constituted reckless disregard to a serious medical condition. This Fourteenth Amendment claim will proceed against Nurse Oeser.

**Nurse Durko**

Sadowski alleges that he saw Nurse Durko on August 3, 2017 and complained of pain from the injury to his head, dizziness, blurred vision and ringing in his ears. She dispensed Ibuprofen to Sadowski for pain and indicated that he was on the list to see a physician. Dr. Clements examined Sadowski the next day. The Court concludes that these allegations do not state a claim that Nurse Durko was intentionally or recklessly indifferent to his serious medical condition or symptoms. This Fourteenth Amendment claim against Nurse Durko is dismissed. *See* 28 U.S.C. § 1915A(b)(1).

Sadowski also alleges that he saw Nurse Durko on August 22, 2017. At that time, he was still experiencing pain on the right side of head, burred vision and dizziness. During the visit, Nurse Durko spoke to Dr. C. Wright who prescribed Naproxen for pain and that Sadowski be placed on the list to be seen by a physician. Given that Nurse Durko related Sadowski's symptoms to Dr. C. Wright and he ordered specific treatment, these allegations do not plausibly allege that Nurse Durko was intentionally or recklessly indifferent to Sadowski's medical needs. The claim related to Nurse Durko's treatment of Sadowski on August 22, 2017 is dismissed. *See* 28 U.S.C. § 1915A(b)(1).

**Defendant Physicians and Nurses – Individual Capacity Claims**
**Eighth Amendment Deliberate Indifference to Medical Needs**

As of August 18, 2018, Sadowski was a sentenced prisoner. The Eighth Amendment therefore applies to his allegations which post-date his sentencing. To state a claim for deliberate indifference to a serious medical need under the Eighth Amendment, a plaintiff must meet a two-pronged test. Under the first prong, a plaintiff must demonstrate that his or her medical need was

"sufficiently serious." *Salahuddin v Goord*, 467 F.3d 263, 279 (2d Cir. 2011). Factors relevant to the seriousness of a medical condition include whether "a reasonable doctor or patient would find [it] important and worthy of comment," whether the condition "significantly affects an individual's daily activities," and whether it causes "chronic and substantial pain." *Chance v. Armstrong*, 143 F.3d 698, 702 (2d Cir. 1998) (internal quotation marks and citations omitted).

In addition, subjectively, the plaintiff must establish that the defendant was actually aware of or recklessly disregarded a substantial risk that the plaintiff would suffer serious harm as a result of his or her actions or inactions. *See Salahuddin*, 467 F.3d at 279-80. Mere negligent conduct does not constitute deliberate indifference. *See id.* at 280 ("[R]ecklessness entails more than mere negligence; the risk of harm must be substantial and the official's actions more than merely negligent."); *Hernandez v. Keane,* 341 F.3d 137, 144 (2d Cir. 2003) (medical malpractice alone does not amount to deliberate indifference).

Sadowski has plausibly alleged that he suffered from a serious medical condition, severe pain in his head and a possible concussion, due to hitting his head in the prison van on July 21, 2017. His condition continued beyond his sentencing date. Thus, the Court considers whether Sadowski has alleged sufficient facts to meet the subjective or deliberate indifference prong of the Eighth Amendment standard as to each defendant who treated him during the period after became a sentenced inmate.

### Dr. C. Wright

Sadowski alleges that during his visit to the medical department on August 22, 2017, Nurse Durko consulted with Dr. Wright about his complaints of pain on the right side of his head, blurred vision and dizziness. This visit was a follow-up appointment at the recommendation of Dr. Clements who had previously diagnosed Sadowski as suffering from

post-concussion symptoms. Dr. C. Wright, who was present in the medical unit, directed Nurse Durko to provide Sadowski with Acetaminophen, prescribed Naproxen, 500 milligrams, to be taken by Sadowski for thirty days, but did not examine Sadowski. Dr. C. Wright recommended that Sadowski be placed on the sick call list to see a physician at another time. Sadowski does not allege that Dr. C. Wright examined him at any time after that appointment or that any other physician examined him. Prison officials transferred Sadowski to Walker at the latest on August 31, 2017.

Sadowski's allegations may be construed as a claim that Dr. C. Wright should have examined him on August 22, 2017 or shortly thereafter given the nature and severity of his medical complaints. Those allegations state a plausible Eighth Amendment claim of deliberate indifference to Sadowski's medical needs and will proceed against Dr. C. Wright.

**Nurse Chris Doe**

Sadowski alleges that Nurse Chris Doe saw him at Walker on September 7, 2017 in response to his complaints of continued head pain/headaches. At the visit, Sadowski described shooting pain in the right side of his head which lasted from a few minutes to a few hours and shooting pain in his right ear every day. In response to these complaints, Chris Doe placed him on the sick call list to be seen by a physician for his various medical issues. To the extent that Sadowski alleges that Nurse Chris Doe did not provide him with any treatment or make any effort to facilitate an appointment with a physician to treat his symptoms in a timely manner, the Court concludes that Sadowski has stated a plausible claim of deliberate indifference to medical needs or symptoms. The Eighth Amendment claim against Nurse Chris Doe from Walker will proceed.

**Dr. Naqvi**

On September 11, 2017, Dr. Naqvi listened to Sadowski's complaints regarding the head injury that he had sustained on July 21, 2017 and prescribed Elavil to treat his painful headaches. Dr. Naqvi did not refer Sadowski to be examined by a specialist. On September 25, 2017, Sadowski complained of severe head pain and informed Dr. Naqvi that he had experienced side effects from taking Elavil. Dr. Naqvi increased the dosage of Elavil. On October 11, 2017, Sadowski informed Dr. Naqvi that Elavil had alleviated his headaches to some degree. Sadowski again mentioned that the side effects of the medication had affected his ability to function. Dr. Naqvi increased the dosage of Elavil, suggested that Sadowski exercise to lose weight, and ordered bloodwork. The Court concludes that the allegation that Dr. Naqvi continued to prescribe Elavil despite Sadowski's complaints of side effects from the medication states a plausible claim of deliberate indifference to medical needs. *See Garrett v. Igbinosa*, No. Case No. 1:16-cv-00259-LJO-MJS (PC), 2018 WL 1605737, at *3 (E.D. Cal. Apr. 3, 2018) ("Plaintiff has adequately alleged facts to show that Defendant acted with deliberate indifference when she continued the prescription for a generic medication despite being informed that Plaintiff was suffering painful side effects from it."), *report and recommendation adopted*, Case No. 1:16-cv-00259-LJO-JDP (PC), 2018 WL 2128278 (E.D. Cal. May 9, 2018); *Houck v. Wexford Health Sources, Inc.*, No. CV GJH-16-1323, 2017 WL 3500400, at *6 (D. Md. Aug. 15, 2017) (denying motion to dismiss Eighth Amendment deliberate indifference to medical needs claim against physician because inmate had plausibly alleged that physician had continued to prescribe him medication despite the fact that he had informed the physician of his concerns about negative side effects). The Eighth Amendment deliberate indifference to medical needs claim will proceed against Dr. Naqvi.

**Nurses Jane Doe from Osborn and from Radgowski**

Sadowski does not mention or refer to Nurse Jane Doe from Radgowski or Nurse Jane Doe from Osborn in the body of the amended complaint. As such he has not plausibly alleged that either defendant violated his federally or constitutionally protected rights.

Sadowski asserts that prison officials at Walker mistakenly transferred him to Radgowski on October 27, 2017 without his pain medication. On October 30, 2017, prison officials at Radgowski transferred Sadowski to Osborn. There are no allegations that a nurse or other medical provider at Radgowski was deliberately indifferent to Sadowski's medical needs during his four-day confinement there. The claim against Nurse Jane Doe from Ragowski is dismissed. *See* 28 U.S.C. § 1915A(b)(1).

Sadowski alleges that on January 6, 2018, an "unknown nurse" at Osborn dispensed Ibuprofen to him for pain at the recommendation of Dr. Freston and that on February 17, 2018, an "unknown nurse" at Osborn dispensed Ibuprofen and Acetaminophen to him for pain. These allegations do not state a claim of deliberate indifference by Nurse Jane Doe from Osborn. The claim against Nurse Jane Doe from Osborn is dismissed. *See* 28 U.S.C. § 1915A(b)(1).

**Dr. J. Wright**

Sadowski alleges that on January 9, 2018, Dr. J. Wright renewed his prescription for Elavil, but does not indicate that he saw Dr. J. Wright. There is no entry in Sadowski's medical records to suggest that Dr. J. Wright met with or saw Sadowski in person on January 9, 2018 or otherwise treated Sadowski before that date. *See* Am. Compl. at 39. The fact that Dr. J. Wright renewed a prescription does not in and of itself state a claim of deliberate indifference to medical needs. Sadowski has not alleged that Dr. J. Wright was aware that he had suffered any side effects from Elavil or that Elavil was not alleviating his headaches. The allegation that Dr. J.

Wright renewed a prescription for Elavil does not state a claim of deliberate indifference to medical needs and is dismissed. *See* 28 U.S.C. § 1915A(b)(1).

On February 21, 2018, Dr. J. Wright prescribed Benadryl to treat Sadowski's allergic reaction to Tamiflu. *See* Am. Compl. at 37, 39. On February 22, 2018, Dr. J. Wright examined Sadowski because the symptoms suggestive of an allergic reaction to Tamiflu had not been alleviated by Benadryl. *See id.* After examining Sadowski, Dr. J. Wright prescribed Prednisone to treat Sadowski's symptoms. *See id.* at 37. There are no facts to suggest that the medications prescribed by Dr. J. Wright failed to alleviate Sadowski's symptoms. The allegations regarding Dr. J. Wright's treatment of Sadowski in response to his allergic reaction to Tamiflu do not state a claim of deliberate indifference to medical needs against Dr. J. Wright and are dismissed. *See* 28 U.S.C. § 1915A(b)(1).

**Dr. Freston**

Sadowski alleges that he informed Dr. Freston about the side effects that he had experienced from taking Elavil and that those side effects had made him very uncomfortable. Despite this information, Dr. Freston re-prescribed Elavil at the same dosage that had been previously prescribed to Sadowski. Two days later, Sadowski submitted an inmate request to the medical department complaining about the side effects and seeking to be prescribed a different medication. *See* Am. Compl. at 80. The Court concludes that these allegations state a plausible Eighth Amendment claim of deliberate indifference to Sadowski's medical needs. *See Garrett v. Igbinosa*, 2018 WL 1605737, at *3, *report and recommendation adopted*, 2018 WL 2128278; *Houck*, 2017 WL 3500400, at *6. This claim will proceed against Dr. Freston.

**Defendant Physicians – Individual Capacity Claims**
**Fourteenth Amendment Right to Medical Information**

A person has a "protected liberty interest in refusing unwanted medical treatment."

*Cruzan v. Dir., Mo. Dep't of Health*, 497 U.S. 261, 278 (1990); *see also Washington v. Harper,* 494 U.S. 210, 221 (1990) (recognizing a prisoner's "significant liberty interest in avoiding the unwanted administration of antipsychotic drugs").  In *Pabon v. Wright*, 459 F.3d 241 (2d Cir. 2006), the Second Circuit observed that an individual cannot exercise "his established right to refuse medical treatment in a meaningful and intelligent fashion unless he has sufficient information about proposed treatment. . . . [and] [a]bsent knowledge of the risks or consequences that a particular treatment entails, a reasoned decision about whether to accept or reject that treatment is not possible."  *Id.* at 249.  Therefore, "in order to permit prisoners to exercise their right to refuse unwanted treatment, there exists a liberty interest in receiving such information as a reasonable patient would require in order to make an informed decision as to whether to accept or reject proposed medical treatment."  *Id.* at 249-50 (citation omitted).  To state a violation of the Fourteenth Amendment under these circumstances, a prisoner must allege that: "(1) government officials failed to provide him with such information; (2) this failure caused him to undergo medical treatment that he would have refused had he been so informed; and (3) the officials' failure was undertaken with deliberate indifference to the prisoner's right to refuse medical treatment."  *Id.* at 246.

Sadowski alleges that Drs. Naqvi, Freston, and J. Wright failed to inform him that Elavil was also used to treat specific conditions affecting the nervous system and that it had side effects, including weight gain, mood swings and suicide.  He contends that had he known about the side effects, he would not have taken Elavil.  Thus, Sadowski has alleged facts to meet the first and second elements of a Fourteenth Amendment right to medical information claim.

However, there are no allegations that Dr. J. Wright withheld information regarding the side effects of Elavil in order to force or require Sadowski to agree to take that medication.  *See*

*Alston v. Bendheim*, 672 F. Supp. 2d 378, 384–85 (S.D.N.Y. 2009) (dismissing Fourteenth Amendment due process claim because inmate "has not alleged that Dr. Bendheim withheld information from him for the purpose of requiring [him] to accept Ultram"); *Lara v. Bloomberg,* No. 04–CV–8690, 2008 WL 123840, at *5 (S.D.N.Y. Jan. 8, 2008) (holding that inmate failed to satisfy deliberate indifference element of claim of failure to receive medical information because "Plaintiff does not, and indeed Plaintiff cannot, allege that the doctors' purported failure to inform Plaintiff of the side effects of his medication were driven by the doctors' desire to require Plaintiff to accept the treatment offered."). Rather, Sadowski alleges that Dr. J. Wright renewed the prescription without seeing or speaking to him. This allegation constitutes negligence or malpractice, neither of which is cognizable in a section 1983 action. *See Pabon,* 459 F.3d at 250-51 ("Inadvertent failures to impart medical information," "simple lack of due care," and "simple negligence" do "not make out a violation of either the substantive or procedural aspects of the *Due Process Clause of the Fourteenth Amendment."*) (citations omitted) (emphasis in original). The Fourteenth Amendment due process claim against Dr. J. Wright is dismissed. *See* 28 U.S.C. § 1915A(b)(1).

As to Dr. Naqvi, Sadowski alleges that he either ignored or discounted his complaints about the side effects of Elavil on two occasions in 2017 and did not inform Sadowski that the symptoms that he was experiencing could have been side effects or that there were additional side effects of Elavil. Instead, Dr. Naqvi prescribed a higher dosage of Elavil.

As to Dr. Freston, Sadowski alleges that during his telemedicine appointment with him on March 21, 2018, he described the side effects that he had experienced, but Dr. Freston discounted or ignored the side effects and instead re-prescribed Elavil.

Construing the complaint liberally, these allegations are sufficient, at this stage of the

litigation, to meet the deliberate indifference prong of the Fourteenth Amendment right to medical information standard against Drs. Naqvi and Freston. The Fourteenth Amendment claim will proceed against Drs. Naqvi and Freston in their individual capacities.

**ORDERS**

The Court enters the following orders:

**(1)** The following claims are DISMISSED with prejudice pursuant to 28 U.S.C. § 1915A(b)(2): (a) all claims for money damages against the following defendants in their official capacity: Nurse Durko, Nurse Oeser, Nurse John Doe from Hartford Correctional, Nurse Jane Doe from Northern, Nurse Chris Doe from Walker, Nurse Jane Doe from Radgowski, Nurse Jane Doe from Osborn, Dr. Clements, Dr. C. Wright, Dr. Naqvi, Dr. Freston and Dr. J. Wright; (b) all claims for monetary damages against Judge Dyer in his individual capacity.

**(2)** The following claims are DISMISSED with prejudice pursuant to 28 U.S.C. §1915A(b)(1): (a) the Fourteenth Amendment deliberate indifference to medical needs claims against Nurse John Doe Hartford Correctional, Nurse Jane Doe from Northern, Nurse Durko and Dr. Clements; (b) the Eighth Amendment deliberate indifference to medical needs claims against Nurse Jane Doe from Radgowski, Nurse Jane Doe from Osborn and Dr. J. Wright; (c) the Fourteenth Amendment due process claim against Dr. J. Wright.

**(3)** The Fourteenth Amendment deliberate indifference to medical needs claim will proceed against Nurse Oeser in her individual capacity. The Eighth Amendment deliberate indifference to medical needs claims will proceed against Drs. C. Wright, J. Naqvi, C. Freston and Nurse Chris Doe in their individual capacities. The Fourteenth Amendment due process claim will proceed against Drs. Naqvi and Freston in their individual capacities.

**(4) Within twenty-one (21) days of this Order**, the Clerk shall ascertain from the Department of Correction Office of Legal Affairs the current work addresses for Nurse Linda Oeser, Nurse Chris Doe from Walker,[2] Dr. S. Johar Naqvi, Dr. Cary R. Freston, and Dr. Carson Wright.  and mail a copy of the amended complaint, this order and a waiver of service of process request packet to each defendant in his or her individual capacity at his or her current work address.  On the thirty-fifth (35th) day after mailing, the Clerk shall report to the Court on the status of each request.  If any defendant fails to return the waiver request, the Clerk shall make arrangements for in-person service by the U.S. Marshals Service and the defendant shall be required to pay the costs of such service in accordance with Federal Rule of Civil Procedure 4(d).

 **(5)** Linda Oeser, Chris Doe, Dr. Naqvi, Dr. Freston and Dr. C. Wright shall file their response to the amended complaint, either an answer or motion to dismiss, within sixty (60) days from the date the notice of lawsuit and waiver of service of summons forms are mailed to them. If the defendants choose to file an answer, they shall admit or deny the allegations and respond to the cognizable claims recited above.  They may also include any and all additional defenses permitted by the Federal Rules.

**(6)** Discovery, pursuant to Federal Rules of Civil Procedure 26 through 37, shall be completed within six months (180 days) from the date of this order.  Discovery requests need not be filed with the Court.

**(7)** All motions for summary judgment shall be filed within seven months (210 days) from the date of this order.

---

[2]  The Court notes that Chris Doe's last name is listed on a medical record signed by him as Doe. *See* Am. Compl. at 52.

**(8) The Clerk shall** send a courtesy copy of the amended complaint and this order to the Connecticut Attorney General and the Department of Correction Legal Affairs Unit.

SO ORDERED at Bridgeport, Connecticut this 13th day of May, 2019.

_____/s/_____
Kari A. Dooley
United States District Judge